UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 7 |
| Diana L. Armenakis, | Case No. 05-13671 (AJG) |
| Debtor. | |

## ORDER AND OPINION

Before the Court is a request for relief contained within the motion of Diana L.

Armenakis (the "Debtor") to reconsider (the "Motion to Reconsider") the Court's order of

August 14, 2008, lifting the automatic stay (the "Lift Stay Order"), pursuant to Rule 9024 of the

Federal Rules of Bankruptcy Procedure ("FRBP") and Rule 60 of the Federal Rules of Civil

Procedure.  The Debtor's request is to avoid the judicial lien (the "Lien") of Smithbuilt

Financial, LLC ("Smithbuilt"), successor-in-interest to creditor National Loan Investors, L.P.

("NLI"), pursuant to 11 U.S.C. § 522(f) and Rule 4003(d) FRBP (the "Request to Avoid").  Also

before the Court is Smithbuilt's motion for relief from the automatic stay (the "Lift Stay

Motion") pursuant to 11 U.S.C. § 362(d) and Rules 4001(a) and 9014 FRBP.  Smithbuilt seeks

relief from the automatic stay so that it may exercise its rights and remedies under the Lien

against the cooperative apartment (the "Apartment")[1] owned by Debtor and her non-debtor

spouse (the "Non-Debtor Spouse").  For the reasons stated below, (i) the Lien against Debtor's

interest in the Apartment is reduced to not less than $8,923.07 (the "Reduced Lien"),[2] (ii) the

---

[1] The Apartment is part of the cooperative apartment corporation known as "Rivercross Tenants' Corp."
("Rivercross"), wherein ownership of Debtor and Non-Debtor Spouse's particular unit consists of a stock certificate
representing a certain number of shares in the corporation together with the concomitant and appurtenant interest in
a proprietary lease.
[2] As will be explained, this amount represents the amount of the Reduced Lien, assuming Rivercross's lien (*i.e.*,
unpaid maintenance and related charges, hereinafter the "Maintenance") is valued in the amount of $40,253.21, *see
infra* fn.4.  To the extent the Maintenance is invalid, reduced, or of a lower priority than the Lien, the Reduced Lien

balance of the Lien is avoided, and (iii) the Lift Stay Motion is granted so that Smithbuilt may

exercise its rights and remedies against Debtor with respect to the Reduced Lien.

## BACKGROUND

### 1. Factual Background

On May 18, 2005 (the "Petition Date"), Debtor filed a voluntary petition (the "Petition")

for chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Southern

District of New York.  On May 19, 2005, Robert L. Geltzer was appointed as interim trustee, and

on June 28, 2005, he held a § 341(a) meeting, after which he became the trustee (the "Trustee")

pursuant to § 702(d).[3]  On August 8, 2005, NLI moved for relief from the automatic stay (*i.e.*, the

Lift Stay Motion) in order to enforce its rights and remedies under the Lien granted pursuant to a

judgment entered in the Supreme Court of the State of New York, County of New York (the

"State Court"), in an action entitled "*National Loan Investors, L.P. v. James J. Armenakis and*

*Diana L. Armenakis*," bearing Index No. 109166/04 (the "Judgment").  A hearing was scheduled

for August 31, 2005.

The Judgment against Debtor and Non-Debtor Spouse was granted on April 15, 2005, in

a special proceeding conducted pursuant to § 5206(e) of the New York Civil Practice Law and

Rules (the "CPLR") directing the sale of the Apartment to satisfy a money judgment entered

against Debtor and the Non-Debtor Spouse on March 10, 2004, in the amount of $245,000.00 for

their default on a promissory note to NLI's predecessor-in-interest (the "Money Judgment").

The Judgment was filed on May 2, 2005, and it directed the Sheriff of New York County (the

"Sheriff") to sell the Apartment subject to and in compliance with Rivercross's restrictions,

---

would be greater, *see infra* fn.13, 42 and accompanying text, and Discussion § 3.C.iv.
[3] Section 702(d):  If a trustee is not elected under this section, then the interim trustee shall serve as trustee in the case.

rules, regulations, law, and requirements, and that (i) the proceeds of the "said sale" be paid to

Debtor and Non-Debtor Spouse, jointly, in an amount not exceeding $10,000.00; (ii) the Money

Judgment, plus interest from March 10, 2004, be adjudged to be a lien upon the "surplus" of the

"said sale" (*i.e.*, the Lien); and (iii) the "surplus" be applied to the Money Judgment and to any

charges lawfully accruing to Rivercross for unpaid maintenance charges, fees, and expenses to

Rivercross (*i.e.*, the "Maintenance," as defined *supra* fn.2).  Debtor and Rivercross, in its own

motion for relief from the stay, assert in substance that the Maintenance constitutes a consensual

first lien on the Apartment.  Smithbuilt does not concede this point and has reserved its rights to

challenge it, *see infra* fn.13.

    The Petition stayed enforcement of the Judgment and prevented the sale of the

Apartment.  Rivercross's amended secured proof of claim indicated that Debtor and Non-Debtor

Spouse owed Rivercross $40,253.21[4] in Maintenance at the Petition Date.  As of November 3,

2008, Debtor and Non-Debtor Spouse owed Rivercross $75,803.65 in Maintenance, but as of

February 4, 2009, Debtor and Non-Debtor Spouse owed Rivercross $45,760.04 in Maintenance.

At the Petition Date, the New York homestead exemption was $10,000.00, but, on August 30,

2005 (the "Enactment Date"), "the New York State Legislature amended [CPLR] § 5206 to

increase the state's homestead exemption from $10,000.00 to $50,000.00."  *CFCU Cmty. Credit

Union v. Hayward*, 552 F.3d 253, 256 (2d Cir. 2009) (citing 2005 N.Y. Laws Ch. 623)

(hereinafter, the "2005 Amendment").  The new exemption amount became effective

immediately on that date.  *See CFCU*, 552 F.3d at 261.

    Debtor amended Schedule C attached to the Petition and claimed the new homestead

---

[4] Although Debtor's opposition to the Lift Stay Motion states that she and Non-Debtor Spouse owed $32,751.66 in
Maintenance at the Petition Date and Smithbuilt's reply to that opposition states the same amount, no objection was
filed to Rivercross's amended secured proof of claim in the amount of $40,253.21.  *See infra* fn.13.

exemption of $50,000.00 on September 9, 2005. The time to object to the Debtor's exemption was extended a number of times by stipulation with the Trustee to October 17, 2006. No timely objection to Debtor's amended exemption claim was filed. Smithbuilt raised the issue of which exemption should apply in one of its pleadings and during at least one hearing related to the Lift Stay Motion, each of which occurred after the October 17, 2006 date.[5]

Since its filing, the Lift Stay Motion was adjourned numerous times on request of the parties as they attempted to work out a resolution. On January 12, 2007, Debtor received her discharge. On May 1, 2008, the Trustee certified that Debtor's estate (the "Estate") had been fully administered. Eventually, the parties informed the Court that they were unable to resolve the Lift Stay Motion and a hearing was held on July 16, 2008. On August 14, 2008, the Court granted the Lift Stay Order to Smithbuilt.

**2. Motion to Reconsider**

On August 18, 2008, Debtor filed the Motion to Reconsider, with a hearing date set for September 24, 2008. In the Motion to Reconsider, Debtor argued that the Court should relieve Debtor from the Lift Stay Order because Debtor either had no equity (*i.e.*, an amount in excess of the Maintenance and her exemption, hereinafter the "Equity") in the Apartment to which the Lien could attach, or to the extent the Lien attached, § 522(f) gave her the right to avoid the Lien because it impaired her claimed $50,000.00 homestead exemption for the Apartment. Debtor therefore requested that the Court avoid the Lien (*i.e.*, the Request to Avoid). At the September

---

[5] There is considerable disagreement between the parties as to which exemption amount is applicable here (as well as whether an individual debtor in bankruptcy who owns a property with her non-debtor spouse as a joint tenant with the right of survivorship is entitled to claim a full exemption or only half because of the joint tenancy). The question regarding the applicable exemption amount takes on particular importance because Smithbuilt does not have an interest in the Apartment if the $50,000.00 amount is applicable, but Smithbuilt does have an interest in the Apartment if the $10,000.00 amount is applicable. *See infra* fn.41 and Discussion § 3.C.iv.

4

24, 2008, hearing, Debtor argued that the Apartment had a fixed value, as of the Petition Date, of

$78,099.35,[6] which was set in accordance with the New York Private Housing Finance Law.

Smithbuilt argued that the Judgment allowed the Sheriff to auction the right to purchase the

Apartment for this purported fixed value and that this "right to purchase" had a fair market value

of approximately $500,000.00.  Because this question depended solely on New York state law,[7]

principally, the Private Housing Finance Law, the Court stated that it had lifted the stay so that

the State Court could decide the value of the Apartment and thus whether there was Equity in the

Apartment to which the Lien could attach.  Further, when the Court determined the Lift Stay

Motion, it focused on the adequate protection issue as opposed to whether Smithbuilt had an

interest that was entitled to adequate protection.  The Court also stated that Debtor had a right to

have her exemption adjudicated in bankruptcy court.  Apparently, rather than having this Court

address the amount of the exemption and thereby delaying the issue of lifting the stay until the

exemption issue was decided, Smithbuilt stated that it would not challenge Debtor's claimed

exemption in the State Court.[8]

   The Court then determined that it would hold another hearing on the Motion to

Reconsider because the value issue raised significant questions as to Smithbuilt's interest in the

---

[6] This fixed value was provided by Rivercross in response to an informational subpoena by NLI. The question asked for the "current market value of the unit."

[7] "Property interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."  *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1979).  No such federal interest is implicated here.

[8] Although Debtor argues that Smithbuilt should be bound by its concession, that concession must be examined in the context of the exchange between the Court and Smithbuilt when it was made.  The issue that concerned the Court was Smithbuilt seeking to have the State Court adjudicate the Debtor's exemption.  The Court indicated that it would not lift the stay if Smithbuilt were to seek the State Court's adjudication of the exemption issue because that would likely result in Debtor moving before this Court to resolve that issue.  The Court concluded that if the stay were to be reimposed and Debtor were to seek avoidance of the Lien, Smithbuilt should not be bound by its concession made contingent upon the granting of certain relief that was vacated at the request of Debtor.

5

Apartment and, therefore, whether it had "cause" for relief from the stay. The hearing was scheduled for November 6, 2008, and adjourned at the request of the parties to December 10, 2008. At the conclusion of the hearing on the Motion to Reconsider, the Court issued a minute order (the "Minute Order") granting the Motion to Reconsider, vacating the Lift Stay Order, reimposing the automatic stay,[9] and instructing the parties to brief the issue of Smithbuilt's interest in the Apartment. Further, the Court stated that because it would hear the value issue, Smithbuilt would not be bound in considering the § 522(f) issue by its concession regarding whether it would raise the exemption issue in the State Court. The Court held another hearing on March 18, 2009, regarding the parties' submissions on Smithbuilt's interest in the Apartment.

**3. Request to Avoid**

As previously stated, Debtor made the Request to Avoid in the Motion to Reconsider. Debtor argued that the fixed value of the Apartment less the Maintenance, which constituted a consensual first lien on the Apartment, either left no Equity to which the Lien could attach, or to the extent the Lien attached, § 522(f) provided to Debtor the right to avoid the Lien because it impaired her claimed $50,000.00 homestead exemption for the Apartment. Smithbuilt noted that Debtor never formally moved to avoid the Lien,[10] and at the September 24, 2008, hearing, the

---

[9] The Court notes that despite the use of the term "reimpose" in the Minute Order, the specific action taken by the Court vacated the Lift Stay Order and reinstated the stay, restoring the parties to the status quo before the Lift Stay Order was granted. In distinguishing such action from the reimposition of the stay under § 105(a), which would be a "proceeding to obtain an injunction or other equitable relief" under Rule 7001(7) and require the filing of an adversary proceeding, the Tenth Circuit has held that "a party may seek relief from a bankruptcy court order lifting the automatic stay by filing a motion pursuant to Rules 9024 and 60(b) without filing an adversary proceeding." *In re Gledhill*, 76 F.3d 1070, 1079 (10th Cir. 1996) (citing, *inter alia*, *In re AL & LP Realty Co.*, 164 B.R. 231, 232-34 (Bankr. S.D.N.Y. 1994)).

[10] Rule 4003(d) FRBP: A proceeding by the debtor to avoid a lien or other transfer of property exempt under § 522(f) of the Code shall be by motion in accordance with Rule 9014. Notwithstanding the provisions of subdivision (b), a creditor may object to a motion filed under § 522(f) by challenging the validity of the exemption asserted to be impaired by the lien. (As discussed *infra* fn.27 and accompanying text, the last sentence of this rule was added in 2008 and made effective on December 1, 2008.).

Court told Debtor's counsel that a motion to reconsider could not be considered a motion to avoid a lien.[11]

Despite these possible procedural defects with respect to the Request to Avoid, as previously discussed, Debtor's underlying argument challenges the basis of the Lift Stay Order, namely, that Smithbuilt had an interest in the Apartment entitled to protection, thus establishing "cause" for lifting the stay. Therefore, insofar as Debtor seeks avoidance of the Lien, the Court did not grant reconsideration on that basis but rather on the basis of whether Smithbuilt had met its burden of proving a factual and legal right to relief from the stay regarding its interest.[12]

The Court has determined that the state law issues as to the value of the Apartment and the bankruptcy issues of Debtor's exemption are too intertwined for the Court to adjudicate each party's rights without considering all the related issues. To determine if Smithbuilt has an interest in the Apartment entitled to protection, thus providing the basis upon which "cause" for lifting the stay may be established, the Court must also determine to what extent the Lien may be avoided. If Debtor's value of the Apartment were to prevail, the unavoidable part, if any, of the Lien would be Smithbuilt's only interest in the property entitled to protection. Even if Debtor

---

[11] Upon review the Court concludes that although the Request to Avoid, which was not part of Debtor's opposition to the Lift Stay Motion, could not provide the basis for the Motion to Reconsider, it could be considered as a separate request for relief.

[12] The Second Circuit has held that "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citing *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990); *Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988)). Such is the case here, where Debtor requests that the Court consider § 522(f) in its determination of whether or not Smithbuilt has an interest in the Apartment entitled to adequate protection. As explained, *supra* fn.5, the Court's decision on the lift stay issue hinges on the lien avoidance issue. Debtor does not seek "solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. Moreover, the Second Circuit has held that while normally Rule 60(b) relief is sought by motion of a party, "nothing forbids the court to grant such relief *sua sponte*." *Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir. 2001) (citing *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 n.2 (2d Cir. 1977)). Thus, the Motion to Reconsider is properly before the Court because it sought that the Court determine the issue of Smithbuilt's interest in the Apartment, which was not addressed and should have been by the Court in its original determination.

had not made the Request to Avoid within the Motion to Reconsider, Debtor still could have

moved to avoid the Lien by a separate motion.  For the sake of judicial economy, the Court

deems the Request to Avoid a motion to avoid the Lien in compliance with Rule 4003(d) FRBP.

The Court accordingly finds that despite its possible procedural defects, the Request to

Avoid is properly before the Court because Debtor has met the pleading requirements of Rules

4003(d) and 9014 FRBP, namely requesting relief by motion and affording Smithbuilt

reasonable notice and opportunity for hearing.  Consistent with due process, both parties have

had ample opportunity to litigate the central issues relevant to lien avoidance, namely the value

of the Apartment and the proper amount of Debtor's homestead exemption for purposes of a lien

avoidance action.  Further, Smithbuilt has reserved its rights to challenge the Maintenance, *see*

*infra* fn.13, and the Court will provide Smithbuilt with an opportunity to do so, if such would be

relevant to lien avoidance issue.  Accordingly, neither party is prejudiced by the Court's

adjudicating the Request to Avoid herein.  Further, both parties have benefited from the

procedural protections that would have been afforded by a separate motion to avoid the Lien

pursuant to Rule 9014 FRBP.[13]

---

[13] "[W]hen a Rule [9014] motion is appropriate, the adverse party must be given reasonable notice and an opportunity for a hearing in order to insure compliance with the due process requirements of the Constitution." *In re Schrimp*, 17 B.R. 36, 38 (Bankr. W.D. Ky. 1981).  Smithbuilt states in its opposition to the Motion to Reconsider that it assumes for the purposes of that motion (namely, the § 522(f) calculation) and without prejudice to its rights to challenge the same, that the Maintenance is a valid lien on the Apartment.  Debtor did not object to this reservation of rights.  *See supra* fn.13, *infra* fn.42 and accompanying text, and Discussion § 3.C.iv.  The Court assumes that Smithbuilt seeks to reserve its rights either under Rule 7001(2) FRBP for an adversary proceeding in which it would ask the Court to determine the validity, priority, or extent of the Maintenance as a consensual first lien on the Apartment or under Rule 3012 FRBP for a hearing on motion, pursuant to Rule 9014 FRBP, in which it would ask the Court to determine the value of Rivercross's claim for pre-petition Maintenance, as set forth in Rivercross's amended secured proof of claim.  Any reference in this opinion to Smithbuilt's reservation of rights to challenge the Maintenance as a valid lien on the Apartment encompasses this assumption and Smithbuilt's exercise of any and all rights with respect to the Maintenance under Rule 7001(2) FRBP or under Rule 3012 FRBP.

**DISCUSSION**

**1. Value of Apartment**

Smithbuilt contends that it has an interest in the Apartment, in part by virtue of its interest in the "right to purchase."  To determine whether, and if so, to what extent, Smithbuilt has an interest in the Apartment, the Court must first determine the legal issues impacting the Apartment's value as a threshold issue before addressing the Lift Stay Motion or the Request to Avoid.

### A. Whether the Sheriff May Auction the Right to Purchase the Apartment Is a Question of Law

Smithbuilt argues that the Court is capable of taking judicial notice of the fact that the Apartment would have a fair market value well in excess of $500,000.00 when placed for public auction.  Without reaching the issue of whether the Court may take judicial notice of the purported fact that the right to purchase an apartment as described above would be worth far in excess of $78,099.35, the Court will address the fundamental issue of whether the Sheriff may auction the right to purchase the Apartment distinct from the purchase of the Apartment at its fixed price.  Further, related to that determination would be whether the Lien attached to such right even if the right in fact existed.

In this case, whether the right to purchase the Apartment can be separately auctioned by the Sheriff, as an interest to which the Lien attached, is a question of law, not a question of fact. In the Lift Stay Motion, NLI admitted that Rivercross is a limited profit housing company duly organized and existing pursuant to the Private Housing Finance Law of the State of New York. Article II of the Private Housing Finance Law is commonly referred to as the Mitchell-Lama

9

Law.  *See Matter of KSLM-Columbus Apartments., Inc. v. New York State Div. of Hous. & Cmty Renewal*, 5 N.Y.3d 303, 308, 835 N.E.2d 643 (N.Y. 2005); *see also Scruggs-Leftwich v. Rivercross Tenants' Corp.*, 70 N.Y.2d 849, 850, 517 N.E.2d 1337, 1338 (N.Y. 1987) ("Cooperatives such as Rivercross are commonly known as Mitchell-Lama housing.").

However, Smithbuilt later states that Debtor "unpersuasively argue[s]" (i) that the Mitchell-Lama Law allegedly controls and limits the resale value of cooperative apartments within the Mitchell-Lama system, and (ii) that the Court would be unable to order the sale of a cooperative apartment due to a purported cap in resale value allegedly imposed by New York law.  The Court agrees with Debtor's argument on point (i) based on both established case law and New York State statutes and regulations, but the Court disagrees with Debtor's argument on point (ii) based on Smithbuilt's defense to Debtor's application of the increased exemption amount in its Request to Avoid because Smithbuilt's defense leaves Equity to which the Lien remains attached notwithstanding the fixed resale price of the Apartment.

## B. Sheriff May Not Auction the Right to Purchase the Apartment

Smithbuilt argues in substance that the Sheriff could auction the right to purchase the Apartment for the purported capped resale value.  Smithbuilt's theory is that because of the size and desirable location of the Apartment, a prospective purchaser would pay as much as $500,000.00 at auction to purchase the right to get off the waiting list and pay the fixed price under the applicable regulations.  Smithbuilt's theory fails as both a matter of law and a matter of public policy.

10

### i. Mitchell-Lama Housing

In order to provide the proper context, it is useful to first examine the public policy

behind Mitchell-Lama housing:  "The Mitchell-Lama program was designed to encourage

private financing of low and middle income housing where affordable housing was not otherwise

provided by the private real estate market, by the creation of limited-profit housing companies."

*Real Estate Bd. of New York, Inc. v. City Council of City of New York*, 16 Misc. 3d 530, 533, 842

N.Y.S.2d 218, 221 (N.Y. Sup. Ct. 2007); *see also KSLM-Columbus Apartments.*, 5 N.Y.3d at

308; N.Y. Priv. Hous. Fin. Law §§ 11, 11-a, 13 [13].  "In return for offering private developers

long-term, low-interest government mortgage loans and real estate tax abatements, the developer

had to agree to limited rents and profits and to regulation of tenant selection and the transfer of

property."  *Real Estate Bd.*, 16 Misc. 3d at 533-34 (citing N.Y. Priv. Hous. Fin. Law §§ 20-23,

28, 31); *see also Lafayette Morrison Hous., Inc. v. Patterson*, 57 Misc. 2d 579, 582, 292

N.Y.S.2d 785 (N.Y. Civ. Ct. 1968) ("The landlord [of a 'Mitchell-Lama Project'] is a very

special creature of the statute, and is required to comply very strictly with the regulations

prescribed, in fixing what amount of rent is to be paid, which tenants are permitted to occupy

premises, and in determining most of the other conditions of the tenancy.").

As for the regulations themselves, "there is a maximum price which a shareholder may

receive as a refund of consideration upon the resale of his shares in the co-operative."  *Korman v.*

*Bayridge Air Rights, Inc.*, 116 Misc. 2d 237, 238, 455 N.Y.S.2d, 345, 346 (N.Y. Civ. Ct. 1982);

11

*see* N.Y. Priv. Hous. Fin. Law § 31-a.[14]  Specifically, N.Y. Priv. Hous. Fin. Law § 31-a "was

designed and enacted to prevent speculators from investing in co-operative shares and holding

those shares for sale at a profit at a later date.  Purchasers do not share in any increase in the

value of the stock but run the risk that the value of their shares may decrease.  Thus, upon resale,

a shareholder is not entitled to recover more than the initial purchase price paid for the shares."

*Korman*, 116 Misc. 2d at 239.

Additionally, "[t]he regulations governing Mitchell-Lama cooperatives provide that

owners may resell their apartments only to prospective purchasers who are on a waiting list

maintained by the housing company."  *Scruggs-Leftwich*, 70 N.Y.S.2d at 850-51 (citing 9

NYCRR 1727-1.1, 1727-1.3[15]).  Indeed, in finding that the express terms of the contract between

the shareholders and Rivercross "provided that the right to resell an apartment was subordinated

---

[14] Notwithstanding any other provision of this article and subject to any regulation not inconsistent with this section which may be promulgated by the commissioner or supervising agency:
(a) The *resale price of shares in a mutual company shall be fixed by the mutual company*, subject to the approval of the commissioner or supervising agency and shall be equal to (1) the consideration the selling tenant-cooperator paid for such shares and (2) any capital assessments and voluntary capital contributions approved by the commissioner or supervising agency and paid by the selling tenant-cooperator to the mutual company, to the extent not already included in the consideration paid for such shares, and, if established by the mutual company, (3) a proportionate share of the actual aggregate amortization paid on all existing and prior mortgages on the project in reduction of total outstanding principal indebtedness during such period as shall be fixed by the board of directors of the mutual company, to the extent not already included in the consideration paid for such shares, and (4) reasonable administrative charges.
(b) The *aggregate amount to be paid to the selling tenant-cooperator with respect to the sale of the selling tenant-cooperator's shares shall be fixed by the board of directors of the mutual company*, subject to the approval of the commissioner or supervising agency, and shall be equal to (1) the consideration the selling tenant-cooperator paid for such shares, (2) any capital assessments and voluntary capital contributions approved by the commissioner or supervising agency and paid by the selling tenant-cooperator to the mutual company, to the extent not already included in the consideration paid for such shares, and (3) a proportionate share of the actual aggregate amortization paid by the selling tenant-cooperator on all existing and prior mortgages on the project in reduction of total outstanding principal indebtedness during such period as shall be fixed by the board of directors pursuant to subdivision (a) of this section, to the extent not already included in the consideration paid for such shares. *To the extent that a selling tenant-cooperator may be entitled to an amount less than the resale price of his shares, the difference shall be retained by the mutual company.*  N.Y. Priv. Hous. Fin. § 31-a (emphasis added).
[15] 9 NYCRR § 1727-1.3 provides, *inter alia*, that when an apartment in a limited-profit housing company becomes available, applicants with numbers of prospective tenants or cooperators sufficient to fill the vacancy are notified of such availability in the order of their applications, which are required to be time and date-stamped consecutively, with eligible applicants having one right of refusal on an apartment without prejudice to their standing on the waiting list.  *See* 9 NYCRR § 1727-1.3.

to the applicable statutory and regulatory scheme," which in turn "provided that apartments must be resold to persons on a waiting list," the New York Court of Appeals approvingly noted certain policy considerations underlying Mitchell-Lama housing, including the appellant's concern in that case that "sale of units on the open market may lead to the exaction of illegal payments from prospective buyers, . . ." *Scruggs-Leftwich*, 70 N.Y.2d at 852-53.[16]  Accordingly, Debtor only could resell the Apartment for a fixed resale price to the next eligible applicant on the waiting list whose number of prospective tenants or cooperators was sufficient to fill the vacancy.

### ii. Judgment Creditor Steps Into the Shoes of Judgment Debtor

Smithbuilt's argument that, despite these restrictions on Debtor's ability to sell, the Sheriff could auction the right to purchase to someone on the waiting list and then the successful bidder would pay the purported fixed price is contrary to the law in New York.  Namely, Smithbuilt's argument that the Sheriff could auction the right to purchase the Apartment implies that Smithbuilt, as judgment creditor, has greater rights than Debtor, as judgment debtor.  This is not the law in New York.  Rather, "[t]he judgment creditor stands in the shoes of the judgment debtor."  *Cohen v. First Nat'l City Bank*, 49 Misc. 2d 141, 144, 267 N.Y.S.2d 146, 150 (citing, *inter alia*, *Cent. Suffolk Hosp. Assn. v. Downs*, Sup. 213 N.Y.S. 192, for the proposition that a judgment creditor's rights under a lien cannot rise higher than the rights of the judgment debtor

---

[16] The Court of Appeals also found that "[t]he agreement between the shareholders and the housing company is a product of all the relevant documents, including the prospectus.  Here, while the prospectus stated that owners could resell apartments on the open market, it also provided that to the extent there was any conflict between the terms of the offering plan and the statutes and regulations governing Mitchell-Lama housing, such conflicts were to be reconciled in favor of the Private Housing Finance Law and the regulations promulgated pursuant to that law.  The proprietary leases and the purchase agreements also contained this express proviso."  *Scruggs-Leftwich*, 70 N.Y.2d at 852 (citing *Brennan v. Breezy Point Co-op, Inc.*, 63 N.Y.2d 1022, 473 N.E.2d 738 (N.Y. 1984)).  The Court notes that while the full propriety lease and purchase agreement are not included in the record here, Debtor's stock certificate, which is included in the record, incorporates from the appurtenant proprietary lease and Rivercross's by-laws both this express proviso restricting transferability and another proviso restricting the maximum price at which the shares represented by the stock certificate may be sold.

(citation omitted)); *see also* SIEGEL, N.Y. PRAC. § 488 (4th ed.) (stating that "all existing

encumbrances, restrictions, and qualifications on the debtor's property rights will as a rule

modify the rights of the judgment creditor.  The creditor who steps into the debtor's shoes may

walk only on terrain open to the debtor himself.").

     Smithbuilt's argument that the Sheriff could auction the right to purchase the Apartment

fails because this "terrain" is not open to Debtor herself.  *See id*.  The laws and regulations

governing the resale of Mitchell-Lama cooperatives do not permit the owner of a cooperative

apartment to auction the right to purchase it.  Therefore, Smithbuilt, as judgment creditor, in

stepping into Debtor's shoes, could not auction the right to purchase the Apartment.  Moreover,

the Judgment by its own terms[17] belies Smithbuilt's claim that the Sheriff is entitled to auction

the right to purchase the Apartment.  The Judgment not only directed the Sheriff to auction

Debtor's and Non-Debtor Spouse's interest in the Apartment (*i.e.*, the stock certificate and

concomitant and appurtenant proprietary lease) rather than to auction the right to purchase it (*i.e.*,

not part of Debtor's and Non-Debtor Spouse's interest in the Apartment), but the Judgment also

directed that such sale be subject to and in compliance with Rivercross's restrictions, rules,

regulations, law, and requirements.  These in turn are subordinated to the New York Private

Housing Finance Law and the regulations promulgated thereunder.  *See Scruggs-Leftwich*, 70

---

[17] "[I]t is . . . ORDERED and ADJUDGED, that pursuant to CPLR 5206(a) the Sheriff of New York County be, and the same hereby is, directed to sell at public auction, in the manner prescribed by law, subject to and in compliance with all restrictions, rules, regulations, law and requirements of Rivercross Tenant's Corp. or associated therewith, the following described property:  the interest of the Respondents, as joint tenants with the right of survivorship, in and to that certain:  (a) Stock Certificate No. 1176, dated June 1, 1996, representing ownership interest of 414 shares of stock in the cooperative apartment corporation known as 'Rivercross Tenants' Corp.'; together with (b) the concomitant and appurtenant interest of the Respondents, James J. Armenakis and Diana L. Armenakis, in and to that certain Proprietary Lease date [sic] June 1, 1996 between Rivercross Tenants' Corp., and James J. Armenakis and Diana L. Armenakis, as joint tenants with the right of survivorship, for Apartment W325-326E, located at 531 Main Street, Roosevelt Island, New York 10044, (the Stock Certificate and Proprietary Lease to Apartment W325-326E being collectively referred to as the 'Premises') . . . ."

N.Y.2d at 852.  Finally, the public policy behind the Mitchell-Lama program, providing low and

middle income housing, *see Real Estate Bd.*, 16 Misc. 3d at 533, would be nullified if anyone

could bid a premium (*e.g.*, $500,000.00) at an auction for the right to purchase a Mitchell-Lama

cooperative unit at a fixed price, notwithstanding the obvious inconsistency between having the

wherewithal to tender such a bid and being eligible for a place on a Mitchell-Lama waiting list in

the first place.

As previously stated, at the Petition Date, the fixed value or maximum resale price of the

Apartment was $78,099.35.  To the extent the Lien attaches, it can only attach to whatever

interest Debtor may have in the Apartment, subject to the Judgment, *see supra* fn.17 and

accompanying text.  The Judgment limited the attachment to any "surplus" of Debtor's and Non-

Debtor Spouse's interest in the Apartment (*i.e.*, the stock certificate and concomitant and

appurtenant proprietary lease), with the "surplus" being applied to the Money Judgment and the

Maintenance.  Additionally, subject to Smithbuilt's reservation of rights, *see supra* fn.13,

Rivercross has a consensual first lien on the Apartment in the form of the Maintenance, thus

leaving only the Equity, if any, to which the Lien can attach.  Therefore, with respect to Debtor,

the Lien attaches to the Equity, if any, in the Apartment and not, even if such right to purchase

exists, to any right to purchase the Apartment.

## 2. Requirements for Lien Avoidance

Having concluded that the fixed value of the Apartment of $78,099.35 is the value to be

considered in determining the lien avoidance issue, the Court will proceed to determine whether,

and if so, the extent to which, any Equity exists such that Smithbuilt would have an interest in

the Apartment.

### A. Apartment is Property of the Estate

"As a general matter, upon the filing of a petition for bankruptcy, 'all legal or equitable interests of the debtor in property' become the property of the bankruptcy estate and will be distributed to the debtor's creditors." *Rousey v. Jacoway*, 544 U.S. 320, 325, 125 S.Ct. 1561, 1565 (2005) (quoting § 541(a)(1)). The Apartment is property of the Estate. However, "[p]ursuant to [§] 522(b), debtors may exempt certain property from the bankruptcy estate created by the petition, 'allowing them to retain those assets rather than divide them among their creditors.'" *CFCU*, 552 F.3d at 258 (quoting *Rousey*, 544 U.S. at 322 and citing *In re Bell*, 225 F.3d 203, 208 (2d Cir. 2000)). Under § 522(b)(1), a debtor may choose federal or state exemptions, unless the state law applicable to the debtor has "opted-out" of the federal exemption scheme. *See In re Corio*, 190 B.R. 498, 499 (E.D.N.Y. 1995); *In re Hager*, 74 B.R. 198, 201 (Bankr. N.D.N.Y. 1987). Pursuant to N.Y. Debt. & Cred. Law § 284, New York has "opted-out" of the federal exemption scheme, *see Corio*, 190 B.R. at 500, and therefore, pursuant to N.Y. Debt. & Cred. Law § 282, "the real property exemptions of [CPLR] § 5206 take the place of [Bankruptcy] Code § 522(d)(1)." *Hager*, 74 B.R. at 201 (citations omitted). Shares of stock in a cooperative apartment corporation, as long as such apartment is owned and occupied as a principal residence, are one of the types of real property exempt from application to the satisfaction of a money judgment in New York. *See* CPLR § 5206(a)(3).

An "estate in bankruptcy [also] consists of . . . those interests recovered or recoverable through transfer and lien avoidance provisions." *Owen v. Owen*, 500 U.S. 305, 308, 11 S.Ct. 1833, 1835 (1991). However, "judicial liens encumbering exempt assets can be eliminated."

16

*Owen*, 500 U.S. at 308 (citing § 522(f)).[18]  "Section 522(f)(1)(A) thus protects the debtor's

exemption rights from being diminished or even eliminated by liens that attached to the debtor's

property by means of judicial process prepetition."  *In re VanZant*, 210 B.R. 1011, 1013 (Bankr.

S.D. Ill. 1997).

Under § 522(f)(1)(A), "a debtor may avoid the fixing of a lien if three requirements are

met: (1) there was a fixing of a lien on an interest of the debtor in property; (2) the lien impairs

an exemption to which the debtor would have been entitled; and (3) the lien is a judicial lien."  *In

re Wilding*, 475 F.3d 428, 431 (1st Cir. 2007) (citing *In re Chiu,* 304 F.3d 905, 908 (9th Cir.

2002)).  "The debtor bears the burden of proof by a preponderance of the evidence on every

element of [§] 522(f)."  *In re Banner*, 394 B.R. 292, 300 (Bankr. D. Conn. 2008) (citing *In re

Fox*, 353 B.R. 388, 393 (Bankr. D. Conn. 2006)).  The second *Wilding* requirement is addressed

last because it requires the most extensive discussion.

### B. Lien Is Fixed on an Interest of Debtor in Property and Is a Judicial Lien

As for the first *Wilding* requirement, the Supreme Court has explained that "unless the

debtor had the property interest to which the lien attached at some point *before* the lien attached

to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1)."

*Farrey v. Sanderfoot*, 500 U.S. 291, 296, 111 S.Ct. 1825, 1829 (1991) (emphasis in original,

---

[18] Section 522(f), in pertinent part:
    (1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing
    of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which
    the debtor would have been entitled under subsection (b) of this section, if such lien is--
        (A) a judicial lien . . .
    (2)    (A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the
        extent that the sum of--
            (i) the lien;
            (ii) all other liens on the property; and
            (iii) the amount of the exemption that the debtor could claim if there were no liens on the
            property; exceeds the value that the debtor's interest in the property would have in the
            absence of any liens.

footnote omitted).  Debtor and Non-Debtor Spouse have owned the Apartment since 1996, well
before the Lien attached in 2005 (just prior to the Petition Date), thus meeting the first *Wilding*
requirement.

As for the third *Wilding* requirement, the Lien is a judicial lien.  Smithbuilt contends that
"the May 2, 2005 Judgment to sell the apartment Shares and associated proprietary lease doe
[sic] not qualify as a judicial lien.  It permits movant to sell the stock and proprietary lease at
public auction with the proceeds to be applied towards the March 10, 2004 money Judgment."
Smithbuilt's contention conflicts with both the Judgment and the Bankruptcy Code.  The
Judgment provides as follows:  "it is further ORDERED and ADJUDGED that the money
judgment obtained by NLI in the sum of $245,000.00, together with interest from March 10,
2004, in that certain action in this Court entitled "*NAB Asset Venture III, L.P. v. Diana L.
Armenakis, James J. Armenakis and Armenakis & Armenakis*" bearing Index No. 603371/98, be
and the same hereby is adjudged to be a lien upon the surplus of the said sale, and that the lien be
enforced . . . ."  The "said sale" is the Sheriff's sale of the Apartment.  Elsewhere, the Judgment
refers to "payment/delivery of the asset(s) levied upon."  Accordingly, the Judgment falls
squarely within the Bankruptcy Code's definition of "judicial lien" as provided in § 101(36)
("[t]he term 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or
equitable process or proceeding"), and Smithbuilt is a lien creditor against the Estate, thus
meeting the third *Wilding* requirement.

### C. Lien Impairs Debtor's Homestead Exemption

As for the second *Wilding* requirement, the Supreme Court has explained that "[t]o
determine the application of § 522(f) [bankruptcy courts] ask not whether the lien impairs an

18

exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which

he *would have been* entitled but for the lien itself." *Owen*, 500 U.S. at 310-11 (footnote omitted,

emphasis in original). There is no doubt that regardless of the amount of the exemption, whether

$10,000.00 or $50,000.00, the Lien would impair it. *See infra* fn.41. However, the Supreme

Court has further explained that "[u]nder the [Bankruptcy] Code . . . the question is whether the

lien impairs an 'exemption to which the debtor would have been entitled under subsection (b),'

and under subsection (b), exempt property is determined 'on the date of the filing of the

petition.'" *Owen*, 500 U.S. at 314 fn.6 (quoting § 522(f), (b)[(3)](A)).

More specifically, as an "opt-out" state, "New York law governs the nature and scope of

the exemption" "while federal law governs the date on which the exemption come into play":

"Debtors may exempt 'any property that is exempt under . . . State or local law that is applicable

on the date of the filing of the petition . . . .'" *CFCU*, 552 F.3d at 258-59 (quoting §

522(b)(3)(A)). Applying the plain language of § 522(b)(3)(A) to the facts in this case, it is clear

that the $10,000.00 exemption amount was applicable on the Petition Date, May 18, 2005,

because it came before the Enactment Date, August 30, 2005. *See CFCU*, 552 F.3d at 256.

Nevertheless, as previously mentioned, Debtor "bears the burden of proof by a preponderance of

the evidence on every element of [§] 522(f)." *Banner*, 394 B.R. at 300.

Debtor provides two related grounds for demonstrating that she has met this burden with

respect to the second *Wilding* requirement. Debtor first argues that she is *entitled* to the

$50,000.00 exemption amount because Debtor claimed that amount as exempt pursuant to §

19

522(l)[19] and Smithbuilt failed to object within the timeframe set by Rule 4003(b) FRBP.[20]

Debtor supports her argument by referring to *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112

S.Ct. 1644 (1992), in which "the Supreme Court held that § 522(l) and [Rule] 4003(b) [FRBP]

set a strict deadline for objecting to exemptions. The former provides that, unless a party in

interest objects, property listed by the debtor as exempt 'is exempt;' the latter provides that

creditors must file objections to exemptions within 30 days of the § 341 meeting. *With or*

*without a statutory basis* for it, a debtor's claim to exemption may not be challenged beyond Rule

4003(b)'s 30 day period. In the absence of timely objection, the debtor's claimed exemptions are

established under § 522(l)." *In re Maylin*, 155 B.R. 605, 610 (Bankr. D. Me. 1993) (internal

citation omitted, emphasis added). Debtor argues in substance that even if there were no

statutory basis for her amended exemption claim, the claimed $50,000.00 exemption amount *is*

exempt pursuant to § 522(l) because under both *Taylor* and Rule 4003(b) FRBP, no objection

was filed and Smithbuilt has therefore lost its chance to object to it. The Court will address this

argument after considering Debtor's alternative but related argument that the 2005 Amendment

applies retroactively to cases such as hers, where the bankruptcy petition was filed before the

Enactment Date.

---

[19] Section 522(l): The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

[20] Rule 4003(b)(1) FRBP: Except as provided in paragraphs (2) and (3), a party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension. The Court notes that any reference to Rule 4003(b) FRBP's "30 day" timetable includes extensions granted by the Court pursuant to the last sentence of Rule 4003(b)(1) FRBP. In this case, the Court so ordered several stipulations between the Trustee and Debtor extending the time to object to claimed exemptions and discharge from the Petition Date to the final deadline for objecting to claimed exemptions and discharge on October 17, 2006, so that is the relevant Rule 4003(b) FRBP timetable here.

### i. 2005 Amendment Only Applies Retroactively to Bankruptcy Cases Filed After the Enactment Date

Debtor also presents a seemingly alternative but related ground for demonstrating that she has met her burden with respect to the second *Wilding* requirement. Debtor argues that notwithstanding the plain language of § 522(b)(3)(A) (permitting debtors to exempt "any property that is exempt under . . . State or local law that is applicable on the *date of the filing of the petition*" (emphasis added)), the 2005 Amendment applies retroactively in cases where the bankruptcy petition was filed before the Enactment Date, citing three recent decisions rendered by bankruptcy courts, one of which was ultimately affirmed by the Second Circuit, in New York for support. Each of the three cases Debtor cites is distinguishable from this case, and the Court finds that the 2005 Amendment only applies retroactively to bankruptcy cases filed before the Enactment Date.

First, while the court in *In re Little*, 2006 WL 1524594 (Bankr. N.D.N.Y. 2006), allowed a debtor to claim the increased exemption amount for a debt incurred before the Enactment Date, the debtor in that case filed her bankruptcy petition after the 2005 Amendment was enacted. In fact, the court in that case repeatedly mentioned that § 522(b) required the court to apply the law applicable on the debtor's filing date. *See id.*, at *14.

Second, in *In re Hayward*, 343 B.R. 41 (Bankr. W.D.N.Y. 2006), the court held that, like in *Little*, the increased exemption could be claimed with respect to a "general unsecured debt, not reduced to judgment" incurred prior to the Enactment Date. However, also like in *Little*, the court in *Hayward* found that the "increased homestead exemption provided for under the Homestead Exemption Amendment [*i.e.*, the 2005 Amendment] is not available to New York debtors who filed prior to August 30, 2005." *Id.*, 343 B.R. at 47. *Hayward* was affirmed by both

21

the district court, *see CFCU Cmty. Credit Union v. Hayward*, 2007 WL 4232721 (W.D.N.Y.

2007), and the Second Circuit, *see CFCU*, 552 F.3d 253.[21]

Third, although the court applied retroactivity in *In re Carpenter*, 2006 WL 1518988

(Bankr. W.D.N.Y. 2006), the facts in that case distinguish it from this case.  In that case, the

debtor filed an abandonment motion on the grounds that the trustee's failure to timely object to

the increased exemption amount she claimed pursuant to the 2005 Amendment, despite filing her

bankruptcy petition before the Enactment Date, entitled her to the increased exemption, thus

leaving no non-exempt equity in her property for her estate.  The court held that despite its

holding in *Hayward*, *supra*, limiting the increased homestead exemption, and its retroactive

application, to cases filed on or after the Enactment Date, "*Taylor* and Rule 4003(b) trump the

provisions of [§ 522(b)(3)(A)] and the decision in *Hayward* in this particular case where the

Schedule C Amendment was not timely objected to by either the Trustee or the Debtor's

creditors." *Carpenter*, 2006 WL 1518988, *4.  Notably, the issue in *Carpenter* was whether a

trustee could object to a claimed exemption after the Rule 4003(b) FRBP deadline in the

abandonment context, rather than whether a secured creditor, like Smithbuilt in this case,[22] could

challenge a claimed exemption after the Rule 4003(b) FRBP deadline in the lien avoidance

context.

---

[21] The Court notes that *In re Trudell*, 381 B.R. 441 (Bankr. W.D.N.Y. 2008), which extended *Hayward*'s holding to debts or obligations reduced to judgment before the Enactment Date, is distinguishable from this case, where Debtor filed for bankruptcy *before* the Enactment Date, because the debtor in *Trudell* filed for bankruptcy *after* the Enactment Date.

[22] "[B]y definition a lien creditor is always, at least nominally, a secured creditor." *In re Bradley*, 369 B.R. 147, 155 (Bankr. S.D.N.Y. 2007); *see also United States v. Ron Pair Enters.*, 489 U.S. 235, 240, 109 S. Ct. 1026, 1029-30 (1989) (stating that "there are two types of secured claims:  (1) voluntary (or consensual) secured claims, each created by agreement between the debtor and the creditor and called a 'security interest' by the [Bankruptcy] Code, and (2) involuntary secured claims, such as a judicial or statutory lien, which are fixed by operation of law and do not require the consent of the debtor.") (citations omitted).

### ii. Smithbuilt May Defend Against Debtor's Claimed Exemption Under Rule 4003(d) FRBP

By citing *Carpenter*'s holding, Debtor thus returns to the first ground she provided for demonstrating that she has met her burden with respect to the second *Wilding* requirement. The Court begins its analysis of this argument by noting that under § 522(l) and Rule 4003(b) FRBP, Debtor is correct that she is entitled to the $50,000.00 exemption amount. As a secured creditor, Smithbuilt could have waited until the case closed to exercise its rights and remedies against Debtor with respect to the Lien. Instead, Smithbuilt has participated in the case since it filed the Lift Stay Motion,[23] and Smithbuilt had notice that Debtor was claiming the increased exemption amount because Debtor premised her opposition to the Lift Stay Motion partly on that basis. Because no objection was filed, Debtor is entitled to the increased exemption under § 522(l) and Rule 4003(b) FRBP.

However, as discussed below, Debtor seeks affirmative relief in the Request to Avoid, which falls under § 522(f) and Rule 4003(d) FRBP, but nonetheless contends that Smithbuilt is

---

[23] Smithbuilt also filed a secured proof of claim, even though, as a secured creditor, it was not required to do so. *See* § 501(a) ("A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest."); *see also Maylin*, 155 B.R. at 611 ("A secured creditor may, but need not, file a proof of claim."); *In re Thompson*, 263 B.R. 134, 137 (Bankr. W.D. Okla. 2001) ("A secured creditor need not file a proof of claim in bankruptcy because the general rule is that liens pass through bankruptcy unaffected." (citing *Johnson v. Home State Bank*, 501 U.S. 78, 82, 111 S. Ct. 2150 (1991))); *cf.* Rule 3002(a) FRBP ("An unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed . . . ."). No objection was filed to Smithbuilt's claim; thus the claim is deemed allowed. *See* § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects."); Rule 3007(a) FRBP. Therefore, Smithbuilt has an involuntary secured claim to the extent of the value of the collateral (*i.e.*, the Apartment) securing the Lien (*i.e.*, $245,000.00 plus interest from March 10, 2004). *See* § 506(a)(1) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim."); *see also Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 961, 117 S. Ct. 1879, 1884 (1997) ("a secured creditor's claim is to be divided into secured and unsecured portions, with the secured portion of the claim limited to the value of the collateral" (citing *Ron Pair*, 489 U.S. at 238-39)). The value of the collateral is discussed *supra* Discussion § 1 *et seq*.

still limited by the Rule 4003(b) FRBP timeframe, which would preclude any challenge to

Debtor's claimed exemption at this time.  On the other hand, Smithbuilt's rights[24] were not

threatened until Debtor made the Request to Avoid in the Motion to Reconsider, and in defense

of those rights, Smithbuilt has challenged whether *on the Petition Date* Debtor *would have been*

*entitled* to the increased exemption.  The challenge is not whether Debtor *is* entitled to the

claimed exemption, but rather whether she has met her burden with respect to the second *Wilding*

requirement (as previously stated, "the question is whether the lien impairs an 'exemption to

which the debtor would have been entitled under subsection (b),' and under subsection (b),

exempt property is determined 'on the date of the filing of the petition.'"  *Owen*, 500 U.S. at 314

fn.6 (quoting § 522(f), (b)[(3)](A))).[25]

While the Court will review the jurisprudence examining the tension between subparts

(b) and (d) of Rule 4003 FRBP, the Court begins by noting that the "law is well settled that

limitations do not normally run against a defense.  This principle has often been expressed in the

figure of speech that the statute is available only as a shield, and not as a sword."  *Luckenbach S.*

---

[24] "Lien creditors hold constitutionally cognizable property rights in assets against which their liens lie."  *Maylin*, 155 B.R. at 613 fn.28 (citing *United States v. Security Industrial Bank*, 459 U.S. 70, 77, 103 S. Ct. 407, 411-12 (1982)).

[25] The court in *Montgomery*, as well as other courts, referred to an exemption claimed pursuant to § 522(l) as an "exemption by default."  *See Maylin*, 155 B.R. at 615*; see also In re Mohring*, 142 B.R. 389, 391 (Bankr. E.D. Cal. 1992); *In re Morgan*, 149 B.R. 147, 150 (B.A.P. 9th Cir. 1993).  Courts attempting to allocate the burden of proof on the elements of lien avoidance have considered whether such a default exemption satisfies that burden.  The *Maylin* court stated that "consistent with § 522(l), Rule 4003 and *Taylor,* the debtor can establish entitlement to an exemption, *prima facie,* by listing it specifically on his or her the schedules, designating clearly the basis for each exemption claimed. . . . In the face of such a showing, the burden shifts to the creditor challenging the exemption as part of its § 522(f) defense to prove that the exemption claim is not proper."  *Maylin*, 155 B.R. at 614.  Additionally, the *Maylin* court approvingly noted the court's holding in *In re Indvik*, 118 B.R. 993, 1007 (Bankr. N.D. Iowa 1990) that "the debtor may not use the exempt status of the property as proof by preclusion that the exempt property is appropriate property for lien avoidance."  *Maylin*, 155 B.R. at 614 fn.33 (quoting *Indvik*, 118 B.R. at 1007).  The court in *In re Streeper*, 158 B.R. 783, 786-87 (Bankr. N.D. Iowa 1993) also approvingly cited *Indvik* for burden of proof issues with respect to "exemptions by default":  "Exemption under § 522(l) does not determine the underlying factual [state law] issues of the exemption question by actual litigation."  *Streeper*, 158 B.R. at 786-87 (citing *Indvik*, 118 B.R. at 1006).

24

*S. Co. v. United States*, 312 F.2d 545, 549 fn.3 (2d Cir. 1963) (citing *Northern Pac. Ry. v. United States*, 277 F.2d 615, 623-624 (10th Cir. 1960) and cases cited).  Specifically, the Supreme Court has stated that the "purpose of . . . statutes [of limitations] is to keep stale litigation out of the courts. . . . To use the statute of limitations to cut off the consideration of a particular defense in the case is quite foreign to the policy of preventing the commencement of stale litigation." *United States v. Western Pac. R. Co.*, 352 U.S. 59, 72, 77 S.Ct. 161, 169 (1956).

Applying this principle to the facts of this case, Debtor attempts to use the Rule 4003(b) FRBP timeframe to cut off any consideration of Smithbuilt's defense to the Request to Avoid.  In other words, even though Debtor is seeking affirmative relief, she seeks to use the Rule 4003(b) FRBP timeframe as a "sword" to prevent Smithbuilt from defending its rights.  She does not seek to use Rule 4003(b) FRBP as a "shield" to protect her entitlement to the claimed exemption from a tardy challenge by Smithbuilt.  Indeed, Debtor *is* entitled to the increased exemption, and Smithbuilt does not challenge that entitlement.[26]  Smithbuilt merely seeks to raise a defense as to Debtor's having met her burden of proof for one of the elements of lien avoidance.  The Court finds that under Rule 4003(d) FRBP, Smithbuilt may do so.  This finding is consistent with the general principle discussed above as well as important principles underlying the Bankruptcy Code and Rules.

---

[26] "A lien avoidance action . . . does not place in issue the debtor's *entitlement* to the exemption so claimed.  It focuses instead on entitlement to lien avoidance.  Section 522(f) by its terms restricts the availability of lien avoidance to property *otherwise exempt under [§] 522(b)*.  An exemption which the debtor acquires solely by default pursuant to [§] 522(l) is *not* necessarily 'an exemption to which the debtor would have been entitled under subsection (b) of this section [§ 522].'  Section 522(l) therefore does not satisfy the [§] 522(b) eligibility element of a lien avoidance action.  By the same token, a determination under [§] 522(f) that property is ineligible for *lien avoidance* does not mean that the property is then ineligible for *exemption.*  The debtor's entitlement to the exemption remains undisturbed regardless of the outcome of the lien avoidance action."  *Montgomery*, 80 B.R. 385, 388-89 (Bankr. W.D. Tex. 1987) (quoting § 522(f), additional citations omitted, emphasis in original); *see also Streeper*, 158 B.R. at 786 (citing *Indvik*, 118 B.R. at 1004-05) ("[E]ven if a debtor is entitled to exempt property under state law, he or she is not automatically entitled to avoid the lien on the exempt property under federal law.  The entitlement to an exemption and entitlement to avoid the lien on the exempt property are separate questions.").

25

The 2008 Advisory Committee Notes explaining the newly-added last sentence of Rule

4003(d) FRBP ("Notwithstanding the provisions of subdivision (b), a creditor may object to a

motion filed under § 522(f) by challenging the validity of the exemption asserted to be impaired

by the lien," hereinafter the "Clarifying Sentence") supports this reading of the rule:

> Subdivision (d) is amended to clarify that a creditor with a lien on property that
> the debtor is attempting to avoid on the grounds that the lien impairs an
> exemption may raise in *defense* to the lien avoidance action any objection to the
> debtor's claimed exemption. The right to object is limited to an objection to the
> exemption of the property subject to the lien and *for purposes of the lien
> avoidance action only.* The creditor may not object to other exemption claims
> made by the debtor. Those objections, if any, are governed by Rule 4003(b). 9
> COLLIER ON BANKRUPTCY ¶ 4003 App. 4003[4] (15th ed. rev. 2009) (emphasis
> added).

Although the Clarifying Sentence became effective on December 1, 2008, which is after Debtor

made the Request to Avoid in the Motion to Reconsider on August 18, 2008, Smithbuilt had

objected to Debtor's entitlement to the exemption prior to the Request to Avoid. As stated

above, the Court's interpretation of Rule 4003(d) FRBP is the same notwithstanding the

Clarifying Sentence, but the fact that the Clarifying Sentence became effective after Debtor

sought relief in the Request to Avoid does not preclude the Clarifying Sentence from applying to

the Request to Avoid.[27]

---

[27] While the Court does not decide whether the Clarifying Sentence governs these proceedings, the Court notes that
the Supreme Court's order adopting the amended rules states that they "shall take effect on December 1, 2008, and
shall govern all proceedings in bankruptcy cases thereafter commenced and, insofar as just and practicable, all
proceedings then pending." Communication from the Chief Justice, *2008 Order of the Supreme Court Adopting
Amendments to the Federal Rules of Bankruptcy Procedure,* Apr. 23, 2008. The Court nonetheless observes that it
would be both just and practicable for the Clarifying Sentence to govern these proceedings because the Clarifying
Sentence reflects the strong majority view of courts on this issue and is consistent with the Court's interpretation of
Rule 4003(d) FRBP notwithstanding the Clarifying Sentence.

Prior to Rule 4003(d) FRBP's amendment, courts considering the tension between subparts (b) and (d) of Rule 4003 FRBP provided various rationales for reaching the conclusion that was ultimately embodied in the Clarifying Sentence.[28]

The highest court to address this tension is the Seventh Circuit in *In re Schoonover*, 331 F.3d 575 (7th Cir. 2003) ("As far as we can tell, this is the first appellate consideration of the question whether Rule 4003(b) and *Taylor* affect the time available to lienholders.").  Beginning with an observation common to many of the courts addressing this issue, the *Schoonover* court noted that a judicial lienholder has a "valuable entitlement:  to wait out the bankruptcy and enforce the lien at its conclusion, unless the debtor asked the bankruptcy court for relief.  '[A] creditor's right to foreclose on [a lien] survives or passes through the bankruptcy.'"  *Schoonover*, 331 F.3d at 578 (quoting *Johnson*, 501 U.S. at 83.  The *Schoonover* court therefore distinguished the rules applicable to lienholders and general unsecured creditors:

> Although general unsecured creditors must take the initiative by objecting, lienholders may wait for notice under § 522(f).  Once they receive notice, lienholders litigate on the schedule appropriate to a proceeding under § 522(f), not the schedule for general creditors. . . . [L]ienholders have more time [to object to claimed exemptions] than general unsecured creditors, a dispensation essential if lienholders are to enjoy any chance to watch the proceedings from afar and enforce their liens later. Just as § 522(l) and Rule 4003(b) put the onus of timely objection on general unsecured creditors, so § 522(f) and Rules 4003(d) and 9014 put the onus of contesting a lien on debtors; the clock for lienholders runs from the motion under § 522(f) and not from the meeting of unsecured creditors.  *Schoonover*, 331 F.3d at 578.[29]

---

[28] The Court notes that following the minority view of courts on this issue would render the Clarifying Sentence superfluous, thus violating a "cardinal principle" of construction.  *See, e.g., Williams v. Taylor*, 529 U.S. 362, 404, 120 S. Ct. 1495, 1519 (2000) (citing *United States v. Menasche*, 348 U.S. 528, 538-39, 75 S. Ct. 513, 520 (1955) (additional citation omitted)); *Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120 (2001) (collecting cases).

[29] "*Taylor* did not get its 30-day limit from the Bankruptcy Code:  all § 522(l) says is that creditors who want dibs on assets claimed as exempt must object, which [the lienholder] eventually did.  The deadline came from Rule 4003(b), which deals with objections by general creditors.  Motions under § 522(f) to avoid liens fall under Rule 4003(d), not Rule 4003(b)-and Rule 4003(d) does *not* set a 30-day schedule but instead provides that '[a] proceeding by the debtor to avoid a lien or other transfer of property exempt under § 522(f) of the Code shall be by motion in accordance with Rule 9014.'  In turn, Rule 9014 leaves deadline-setting to the bankruptcy judge."  *Schoonover*, 331 F.3d at 578 (quoting Rule 4003(d) FRBP).  The Court notes that *Schoonover*, 331 F.3d at 578, specifically disapproved *In re Chinosorn*, 248 B.R. 324, 328 (N.D. Ill. 2000), in which the district court reversed the bankruptcy

Likewise, the court in the widely-cited *Maylin* case[30] concluded that "the *Taylor* [c]ourt,

which considered only a trustee's late-filed objection to the debtor's exemption in light of §

522(l) and Rule 4003(b), did not overrule a fundamental pillar of bankruptcy law *sub silentio*.

*Taylor* cannot mean that secured creditors lose important rights by doing exactly what the law

has long said they do:  Ignore the bankruptcy proceedings until hailed into court."  *Maylin*, 155

B.R. at 613 (footnote omitted noting that *Taylor* makes no mention of §§ 501 and 502(a), *inter*

*alia*).[31]  The *Maylin* court reasoned that "secured creditors responding to lien avoidance motions

would be deprived of important defenses if they forfeited their right to contest the debtor's

entitlement to the exemption upon which the motion is based because they had, up until that

time, exercised the accepted option not to participate in the bankruptcy proceedings."  *Maylin*,

155 B.R. at 612-13 (footnote omitted).  Accordingly, the *Maylin* court held as follows:

> *Taylor* extends as far as its holding, but not as far as its dictum.  It confirms Rule
> 4003(b)'s deadline for exemption objections made by the bankruptcy trustee
> (and the unsecured creditors who look to the estate for payment).  Its rule does
> not foreclose a secured creditor from defending a § 522(f) . . . action by denying
> that the property involved is exempt under applicable law.  Notwithstanding
> Rule 4003(b) and *Taylor*, affected secured creditors may contest the *bona fides*
> of an exemption in defense of a § 522(f) lien avoidance motion.  *Maylin*, 155
> B.R. at 613.

Both the *Schoonover* and *Maylin* courts focused on secured creditors' right to not

participate in bankruptcy proceedings as justification for allowing them to defend lien avoidance

motions after the Rule 4003(b) FRBP deadline.  While this rationale does not apply to the instant

---

court and held that a lienholder was bound by Rule 4003(b) FRBP's timetable for objecting to claimed exemptions
even within the context of lien avoidance.

[30] *See In re Corson*, 206 B.R. 17, 21 fn.6 (Bankr. D. Conn. 1997) (adopting *Maylin*'s reasoning); *Thompson*, 263
B.R. at 137 (Bankr. W.D. Okla. 2001) (describing *Maylin* as "well-reasoned"); *In re Tinker*, 355 B.R. 380, 384
(Bankr. D. Mass. 2006) (describing the reasoning in *Maylin* as "particularly compelling").

[31] "A § 522(f) lien avoidance motion is one procedure by which a debtor hails a secured creditor into bankruptcy
court and obtains a determination of rights.  It can serve as the functional equivalent of an objection to claim."
*Maylin*, 155 B.R. at 612 (citations to certain Federal Rules of Bankruptcy Procedure omitted).

case because Smithbuilt did not exercise its option not to participate in the proceedings, the

*Schoonover* and *Maylin* courts also focused on the defensive nature of an objection to a claimed

exemption in the § 522(f) context as opposed a late objection in the § 522(l) context. Other

courts have drawn a similar distinction.[32]

     In holding that "a creditor may raise exemption issues in a lien avoidance motion under §

522(f)(1) to *litigate* whether the debtor would have been entitled to the exemption under §

522(b), even if the property at issue has been *deemed* exempt under § 522(l)," the court in

*Streeper* focused on the "entirely different functions" served by §§ 522(l) and 522(f). *Streeper*,

158 B.R. at 786-87 (emphasis added).

> Exemption under § 522(l) quickly determines which property is available for
> distribution by the trustee to unsecured creditors and which property is available
> for the "fresh start" of the debtor. In contrast, § 522(f) *extinguishes the property
> rights of a creditor.* Due process requires notice to the creditor of a debtor's
> intention to avoid the lien. It would be inconsistent with due process to prevent
> the creditor from raising lien avoidance issues solely because of failure to object
> to the claim of exemption. *Streeper,* 158 B.R. at 787 (citing *Indvik*, 118 B.R. at
> 1006-7; *Montgomery*, 80 B.R. at 389; *In re Frazier,* 104 B.R. 255, 259 (Bankr.
> N.D. Cal. 1989); *In re Smith,* 119 B.R. 757, 760 (Bankr. E.D. Cal. 1990))
> (emphasis added).

Indeed, other courts have also approached the question at hand from a rights-based perspective,

particularly in their rejection of the argument that a secured creditor's failure to object to an

exemption within the Rule 4003(b) FRBP timeframe estops[33] or precludes the secured creditor

from challenging the exemption in the lien avoidance context.

---

[32] *See, e.g.*, *In re Canelos*, 212 B.R. 249, 252-53 (Bankr. D. Md. 1997) ("Objections to exemptions are governed by
[§] 522(l) and [Rule] 4003(b). . . . Objections to exemptions as a defense to lien avoidance actions are governed
solely by [§] 522(f).") (footnote omitted).

[33] The Ninth Circuit Bankruptcy Appellate Panel (the "BAP") in *Morgan* contrasted the cases holding that "a
judicial lien creditor who fails to object to a debtor's claim of exemption in a timely fashion may not raise the
alleged invalidity of the exemption as a defense to a lien avoidance action," with those cases holding that "the lien
creditor's failure to object to the debtor's claim of exemption does not prevent the creditor from raising the issue
when the debtor seeks to avoid the creditor's lien." *Morgan* 149 B.R. at 151. The BAP found that courts "adopting
[the former] position have concluded that the creditor either waived the right to object to the exemption or is

29

> [E]quity requires that the court consider the underlying basis for an exemption in the lien avoidance context. It is "entirely appropriate that a debtor about to *eliminate another's property rights* be put to his or her proof, and not be permitted to rely on a technical estoppel which is at best only tangentially related to the lien avoidance issue in any event." In fact, despite the claim of exemption, a lien avoidance action may never be commenced. Thus, requiring a secured creditor to object to an exemption when it is claimed, rather than when the debtor seeks to avoid the lien, fosters unnecessary litigation and may hinder the debtor's fresh start. *Morgan*, 149 B.R. at 152 (quoting *Montgomery*, 80 B.R. at 389-90) (footnote omitted, emphasis added).[34]

In the instant case, Debtor did not even raise § 522(f) until the Motion to Reconsider. Debtor

may never have commenced a lien avoidance action, and when she did, Debtor made the Request

---

estopped from doing so." *Id.* (citing *In re Caruthers*, 87 B.R. 723, 725-26 (Bankr. N.D. Ga. 1988) (waiver); *In re Hahn*, 60 B.R. 69, 74-76 (Bankr. D. Minn. 1985) (mentioning both waiver and estoppel); *Indvik*, 118 B.R. at 1004 (citing *In re Towns*, 74 B.R. 563, 566-67 (Bankr. S.D. Iowa 1987) without further analysis)). However, the BAP stated that it found the "latter cases more persuasive." *See Morgan*, 149 B.R. at 151 (citing *Mohring,* 142 B.R. at 393-394; *Smith*, 119 B.R. at 760; *Frazier,* 104 B.R. at 257-259; *Montgomery,* 80 B.R. at 387-390). Waiver is particularly inapplicable here where Smithbuilt clearly manifested its intention to challenge the validity of Debtor's exemption.

[34] Some courts have expressed concern as to the basis of *Morgan*'s holding. *See Maylin*, 155 B.R. at 613 (citing *Morgan*, 149 B.R. at 151; *Mohring*, 142 B.R. at 392; *Taylor*, 503 U.S. at 650-51 (Stevens, J., dissenting)) ("Other courts have sought to avoid *Taylor*'s rule in § 522(f) proceedings through technical construction of the [Bankruptcy] Code and parsing *Taylor*'s language. . . . [T]wo cases from the Ninth Circuit held that an exemption arising under § 522(l) does not arise under § 522(b), and thus cannot support § 522(f) lien avoidance. This argument was one prong of Justice Stevens' dissent in *Taylor* and thus was rejected by *Taylor*'s majority. I find such efforts unconvincing and, in light of today's holding, unnecessary."); *In re Jarski*, 301 B.R. 342, 345 (Bankr. D. Ariz. 2003) ("The Ninth Circuit BAP relied primarily on due process concerns. The notice of the first meeting of creditors does not give notice of what the debtor has claimed as exempt, and gives no indication to lienholders that their liens may possibly be avoided; the notice only gives notice of the time to object to any claimed exemptions. "Due process should require that the lien creditor receive notice . . . that the liened property is claimed as exempt before the time to object has expired." (quoting *Morgan*, 149 B.R. at 152)). As discussed below, the court in *Jarski* interpreted the *Morgan* court's rationale as implying that lienholders were entitled to "greater due process rights" than general unsecured creditors. The Court disagrees with that interpretation and with *Morgan* on this point. Lienholders do not have "greater due process rights" than the trustee or general unsecured creditors; they merely have different due process rights, such as waiting until their rights are threatened to participate in a bankruptcy case. *See, e.g..*, *Streeper*, 158 B.R. at 787; *Maylin*, 155 B.R. at 613 ("the defending secured creditor cannot fairly be deprived of its opportunity to defend by disputing the exemption because it did not review the debtor's schedules and object to exemption claims in compliance with Rule 4003(b) and *Taylor*."). One Massachusetts bankruptcy court has held that scheduling property as exempt implicates § 522(f) and that when a lienholder has notice of such scheduled exempt property, "[t]hat notice is all that is required to alert a lien creditor that it may be dislodged from its otherwise comfortable perch." *In re Tofani*, 365 B.R. 338, 344 (Bankr. D. Mass. 2007). On this point, the *Tofani* court is wrong, and *Morgan* is correct. A lien avoidance action, which would directly threaten the secured creditor's rights, may never be commenced and requiring secured creditors to object to claimed exemptions before a § 522(f) motion is filed may foster unnecessary litigation and hinder the debtor's fresh start. *See Morgan*, 149 B.R. at 152. In other words, the secured creditor would be forced to launch a pre-emptive defense to protect its rights. *See Montgomery*, 80 B.R. at 385 (observing that such "prophylactic litigation" would "swallow up the fresh start rule" by delaying "the debtor's unfettered use of his or her claimed exemptions"). Finally, the Court notes that another Massachusetts bankruptcy court has followed the strong majority of courts, including *Schoonover* and *Maylin*. *See Tinker*, 355 B.R. 380.

to Avoid in an unconventional fashion. Although Smithbuilt joined the issue in its opposition to

the Motion to Reconsider, equity dictates that the Court allow Smithbuilt to defend its rights,

which were not threatened until Debtor made the Request to Avoid in the Motion to

Reconsider,[35] and therefore to challenge whether Debtor has met her burden of showing that *on

the Petition Date* she *would have been entitled* to the increased exemption.

Finally, one bankruptcy court has relied on current scholarship to reach this result while

maintaining consistent treatment of lienholders and general unsecured creditors:

> *Morgan* and *Schoonover* reach the right result but neither analysis is entirely
> satisfactory, and there is a more sound statutory basis on which to reach their
> results. The "would have been" language of § 522(f) imposes a time element on
> the types of exemptions that can be used to avoid liens. On this analysis, the
> debtor is only able to avoid liens by an exemption to which he would have been
> entitled at the time of filing his petition. Thus the lien creditors in *Morgan* and
> *Schoonover* would be permitted to show that the debtor could not satisfy the
> "would have been exempt" language from § 522(f) at the time he filed his
> petition. . . . This analysis achieves the *Morgan* and *Schoonover* result without
> suggesting that lienholders have greater due process right [sic] or different
> deadlines than do general creditors. [The lienholder] is therefore entitled to
> make a showing that [the debtor] is unable to satisfy § 522(f)'s requirement that
> the property "would have been exempt" at the time of the petition date,
> notwithstanding her failure to timely object to his exemption claim. *Jarski*, 301
> B.R. at 345-46 (citing Matthew Ellingson, *Getting Around Taylor: A New Look
> at Judicial Lienholders and Exemptions by Default*, NORTON BANKR. L.
> ADVISER, October 2003, at 7, 9-10).

The Court agrees with this analysis. Smithbuilt is entitled to make a showing that Debtor is

unable to satisfy § 522(f)'s requirement that the property "would have been exempt" at the time

of the petition date, notwithstanding its failure to timely object to her exemption claim.

---

[35] The Court notes that "Rule 4003(d) sets no deadline for filing a motion to avoid a lien under [§] 522(f), and the [Bankruptcy] Code has no statute of limitations for these avoiding powers comparable to that for other avoiding powers." 9 COLLIER ON BANKRUPTCY ¶ 4003.05 (15th ed. rev. 2009) (footnote omitted). Accordingly, courts have construed Rule 4003(d) FRBP in light of its purpose to protect exemptions and allowed lien avoidance motions to be filed and determined after the bankruptcy case is closed, with some courts not requiring the case to be reopened to consider such a motion. *See* 9 COLLIER ON BANKRUPTCY ¶ 4003.05 (15th ed. rev. 2009) (footnotes omitted). It would be inequitable to require lienholders to adhere to the Rule 4003(b) FRBP timetable in order to defend their rights when debtors seeking relief under § 522(f) and Rule 4003(d) FRBP are subject to no such timetable.

Smithbuilt attempts to make this showing on two similar grounds, both related to the *res judicata* effect of the Judgment.  Smithbuilt argues that the Judgment is *res judicata* as to the $10,000.00 exemption amount and that the Judgment is *res judicata* as to that amount being shared "jointly" between Debtor and Non-Debtor Spouse.  It has long been the law in New York that the party claiming that a judgment in a prior case estops his adversary from "re-litigating" the issue in a subsequent case has the "burden of proof . . . to show clearly that the question in issue in this case was litigated and determined in the former action."  *Rudd v. Cornell*, 9 Bedell 114, 127, 171 N.Y. 114, 127, 63 N.E. 823, 827 (N.Y. 1902) (citing *Zoeller v. Riley*, 55 Sickels 102, 100 N.Y. 102, 2 N.E. 388 (N.Y. 1885)).  Without delving into the intricacies of *res judicata* in New York, it is clear that Smithbuilt's *res judicata* arguments are facially deficient.

As to the Judgment's provision that the homestead exemption be shared "jointly" between Debtor and Non-Debtor Spouse, that provision is not *res judicata*.  The Judgment was granted in a special proceeding conducted pursuant to CPLR § 5206(e), with Debtor and Non-Debtor Spouse's homestead exemption granted pursuant to CPLR § 5206(a).  Section 5206(a) is only made applicable to debtors in bankruptcy by  N.Y. Debt. & Cred. Law § 282, which was not at issue when the Judgment was rendered because at that time neither Debtor nor Non-Debtor Spouse had filed for bankruptcy.  Therefore, the issue of the applicable homestead exemption for a debtor in bankruptcy was not litigated in the State Court and is not *res judicata*.  That issue is addressed below.

As to the $10,000.00 exemption amount, the Second Circuit has conclusively stated that the 2005 Amendment is retroactive for bankruptcy cases filed after the Enactment Date.  *See CFCU*, 552 F.3d at 256.  The *Trudell* court extended the bankruptcy and district courts'

32

holdings,[36] as ultimately affirmed by the Second Circuit in *CFCU*, 552 F.3d at 256, which applied to obligations or debts incurred but not reduced to judgment before the Enactment Date, to obligations or debts reduced to judgment (*i.e.*, judicial liens) before the Enactment Date. *See Trudell*, 381 B.R. at 444.[37] The retroactivity issue was not litigated in the State Court because the Judgment was rendered prior to the Enactment Date. Therefore, the amount of the exemption is not *res judicata*.

Nonetheless, even though the Court rejects Smithbuilt's argument that the $10,000.00 exemption should be applied because the Judgment made it *res judicata*, the Court accepts Smithbuilt's argument that the $10,000.00 exemption is the amount to which Debtor would have been entitled on the Petition Date. The 2005 Amendment does not apply to Debtor's homestead exemption retroactively because the Petition Date came after the Enactment Date. Therefore, Debtor has not met her burden as to the "time element" (*i.e.*, the "would have been entitled" "on the petition date" element) of the second *Wilding* requirement, and she is limited to a $10,000.00 homestead exemption in the lien avoidance context.

### iii. Debtor is Entitled to Full Homestead Exemption

As a final matter relating to the proper amount of Debtor's homestead exemption, the Court rejects Smithbuilt's argument that Debtor is only entitled to claim half of whichever exemption amount is applicable because Debtor owns the Apartment with Non-Debtor Spouse as

---

[36] *See Hayward*, 343 B.R. 41; *CFCU Cmty. Credit Union*, 2007 WL 4232721.

[37] "What the Legislature gave to holders of judgment liens, the Legislature may take away prior to sale or other satisfaction of the judgment lien. The Court thus concludes that the fact that the judgment lien that is the target of this . . . § 522(f) motion was filed in the County Clerk's Office and became a lien on the Debtor's homestead before the enactment of the increase in homestead exemption from $10,000 to $50,000 does not affect the Debtor's right now to claim the $50,000 exemption in order to accomplish the avoidance of the judgment lien." *Trudell*, 381 B.R. at 444.

a joint tenant with the right of survivorship.[38]

It is well established in New York that an individual debtor in bankruptcy is entitled to the full homestead exemption and not half merely because she is a joint tenant with her non-debtor spouse. The Second Circuit has spoken definitively on this issue in the context of whether joint debtors may aggregate homestead exemptions, finding that the "New York legislature intended to allow each of two joint debtors to claim the benefit of the $10,000 exemption." *John T. Mather Memorial Hospital, Inc. v. Pearl*, 723 F.2d 193, 194 (2d Cir. 1983) (noting that while the debtors' schedules included an exemption of $20,000.00, they had "in other words, *each* claimed the $10,000 exemption of § 5206" (emphasis in original)). By negative implication, an individual debtor in bankruptcy has the same right to the full homestead exemption as she would have if she filed a joint petition with her husband. *See*, *e.g.*, *In re Onyan*, 163 B.R. 21, 25 (Bankr. N.D.N.Y. 1993). As the Second Circuit stated, the purpose of allowing joint debtors to aggregate their homestead exemptions "is made plain by the language of § 282 which states that 'an *individual* debtor domiciled in this state may exempt' (emphasis added) property exempt pursuant to § 5206, as well as by the legislative history of the opt-out statute." *John T. Mather*, 723 F.2d at 195 (citing an exchange from the debate on the bill in the New York Assembly, Report of Proceedings in New York Assembly, May 17, 1982, 5364-65, in which an assemblyman specifically stated that a husband and wife would get "two times the ten"). The statutory language cited by the Second Circuit clearly demonstrates that each

---

[38] Smithbuilt specifically argues that the homestead exemption is property-specific rather than owner-specific. Without deciding that issue, this opinion addresses the narrower, and for this case determinative, issue of whether a an individual debtor in bankruptcy who owns a property with her non-debtor spouse as a joint tenant with the right of survivorship is entitled to claim a full exemption or only half because of the joint tenancy. Additionally, the Court notes that this opinion does not affect the ability of Smithbuilt to exercise its rights and remedies against Non-Debtor Spouse. *See Hager*, 74 B.R. at 201.

individual debtor is entitled to the full homestead exemption under N.Y. Debt. & Cred. Law § 282.[39]

### iv. Lien Avoidance Calculation

With the $10,000.00 exemption amount in mind, the next step is calculating the degree to which the Lien impairs Debtor's homestead exemption.  "Section 522(f)(2) now sets out a mathematical formula for the courts to apply to determine whether a lien impairs the debtor's exemption. Specifically, liens impair an exemption to the extent that the sum of all liens on the property, including the lien under consideration, together with the value that the debtor could claim as exempt in the absence of liens on the property, exceed the value of the debtor's interest in the property if it were totally unencumbered."  4 COLLIER ON BANKRUPTCY ¶ 522.11[3] (15th ed. rev. 2009).  Like the date for determining the proper exemption amount, "the petition date is the operative date for determining the various § 522(f) calculations."  *Wilding*, 475 F.3d at 433. "In § 522, "'value" means fair market value *as of the date of the filing of the petition* or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate.'"  *Wilding*, 475 F.3d at 432 (quoting § 522(a) (emphasis added in *Wilding*)).  "In order to determine whether a lien impairs an exemption, the Bankruptcy Court must calculate the value of the lien as of the filing of the petition.  If the lien 'impairs' the exemption on that date, the court may thereafter address whether the lien should be avoided."

---

[39] Smithbuilt's selective citation of a New York Law Journal article is unpersuasive.  Smithbuilt quotes the following passage:  "It is unclear whether spouses can each claim the $50,000 exemption if both names are on the deed.  Mr. Farley, counsel to Senator Leibell, said the intent was to link the exemption with the property, not the owners, and to limit the total exemption to $50,000, not $100,000."  John Caher, *Legislature Quietly Boosts Homestead Exemption*, New York Law Journal, Sept. 8, 2005, at 1.  Smithbuilt omits the paragraph immediately following that one:  "However, practitioners note that under the prior statute, a husband and wife were each entitled to a $10,000 exemption, and observe that nothing in the new law changes that tradition.  The amended version of the law is altered only to the extent that it deletes all references to $10,000 and replaces them with the new figure."  *Id.* Insofar as N.Y. Debt. & Cred. Law § 282 rather than CPLR § 5206 governs debtors in bankruptcy, this article is also irrelevant to this case.

*Wilding*, 475 F.3d at 432. "If the [§] 522(f)(2) calculation yields a negative number as to a target

lien, the lien is avoided but only to that extent." *Fox*, 353 B.R.at 393 (citing *In re Silveira*, 141

F.3d 34 (1st Cir. 1998); *In re Soost*, 262 B.R. 68, 74 (B.A.P. 8th Cir. 2001); *In re Falvo*, 227

B.R. 662, 666-67 (B.A.P. 6th Cir. 1998)).

Debtor makes the § 522(f)(2)(A) calculation by assuming "for argument's sake" that

Debtor and Non-Debtor Spouse each own a one-half interest in the Apartment, specifically by

subtracting the total Maintenance from the total fixed value of the Apartment and then dividing

the remainder between herself and Non-Debtor Spouse to obtain their respective Equity interests

(of course, each of those values could be divided in half before subtracting them to obtain the

same respective Equity interests, which is the approach the Court uses below). Despite using

incorrect amounts (*i.e.*, Debtor uses current amounts for the fixed price of the Apartment and

Maintenance rather than amounts as of the Petition Date as well as the $50,000.00 exemption

amount), Debtor employs the approach taken by a majority of courts for property co-owned by a

debtor and non-debtor. *See In re Miller*, 299 F.3d 183, 186 (3d Cir. 2002).

The court in *Miller* found that while some courts have advocated a "literal application" of

§ 522(f)(2)(A)(ii) ("all other liens on the property"), *see In re Cozad*, 208 B.R. 495 (B.A.P. 10th

Cir. 1997); *In re White*, 337 B.R. 686 (Bankr. N.D. Cal. 2005), which would dictate that the total

amount of "all other liens on the property" (in this case, the pre-petition Maintenance attributable

to both Debtor and Non-Debtor Spouse) must be netted against Debtor's one-half interest in the

Apartment alone, this "literal application" leads to an "illogical" result wherein Debtor would

benefit from a windfall at the secured creditor's expense. *See Miller*, 299 F.3d at 186. Instead,

the "correct approach" is to view Debtor as owning one half of the property to which one half of

36

the consensual first lien (*i.e.*, the pre-petition Maintenance) is attributable and "therefore to

regard 'property' in subsection (ii) to mean the debtor's interest in the property and then to

allocate the lien among the interests in the property proportionately." *Id.* (agreeing with the

Eleventh Circuit's explanation in *In re Lehman*, 205 F.3d 1255, 1257-58 (11th Cir. 2000), that

using the literal interpretation would "disserve" the legislative intent behind § 522(f)(A)(2) and

produce an "absurd" result). Bankruptcy courts in the Second Circuit have followed *Miller*'s

approach, *see Fox*, 353 B.R. at 393-94; *In re Relyea*, 2003 Bankr. LEXIS 2254, *8-11 (Bankr.

N.D.N.Y. 2003), and the Court chooses to do the same.

Using the template from *Fox*, 353 B.R. at 397, the § 522(f)(2)(A) calculation for the Lien

is as follows (with all values as of the Petition Date):

| | |
|---|---|
| Value of the Apartment | $78,099.35 |
| Value of Debtor's Interest in the Apartment | |
|     (the "Debtor Value")    ½ of $78,099.35/2 | $39,049.68 |
| Total Pre-Petition Maintenance ("all other liens on the property") | $40,253.21 |
| Portion of Pre-Petition Maintenance Apportioned to Debtor's Interest in the | |
|     Apartment (the "Debtor Maintenance") | $20,126.61 |
| The Lien (Smithbuilt) | $271,217.94[40] |
| Homestead Exemption | $10,000.00[41] |
| Debtor Value - Debtor Maintenance - The Lien - Homestead Exemption | |
| ($39,049.68 - $20,126.61 - $271,217.94 - $10,000.00) | ($262,294.87) |
| Reduced Lien ($271,217.94 - $262,294.87) | $8,923.07 |

Accordingly, because the result of the § 522(f)(2)(A) calculation is negative, the Lien impairs

Debtor's homestead exemption, thus meeting the second *Wilding* requirement, and is accordingly

avoidable to that extent (*i.e.*, $262,294.87). *See Fox*, 353 B.R. at 393. The Lien is unaffected at

least to the extent of $8,923.07. Therefore, the Court finds that the balance of the Lien is

---

[40] The calculation is the same whether or not interest is included in the Lien. When the amount of a lien exceeds the value of the subject property, any additional amount of that lien does not alter the reduced portion of the lien under the § 522(f)(A)(2) calculation.

[41] If the exemption amount were $50,000.00, the Lien would be avoided in its entirety. *See* 4 COLLIER ON BANKRUPTCY ¶ 522.11[3] (15th ed. rev. 2009) (footnote omitted) ("[C]ourts have . . . avoided liens in their entirety if the total of the liens on the property and the debtor's exemption exceeds the fair market value of the property.").

avoided and that the Reduced Lien is at least $8,923.07. That portion of the Lien constitutes an

interest of Smithbuilt's which is entitled to protection. However, given Smithbuilt's reservation

of rights to challenge the Maintenance as a valid lien on the Apartment, to which Debtor did not

object, the Reduced Lien may be increased.[42]

## 3. Relief Under § 362(d)

### A. Smithbuilt is a Party in Interest

Only a party in interest may request relief from the automatic stay. *See* § 362(d).[43]

Smithbuilt's predecessor-in-interest, NLI, stated that it is "beyond question that NLI is a party in

interest." "Party in interest" is not defined in the Bankruptcy Code, but the Second Circuit has

interpreted the phrase narrowly, providing stay relief only to creditors. *See In re Comcoach

Corp.*, 698 F.2d 571, 573-74 (2d Cir. 1983). In this case, Smithbuilt is a creditor of Debtor.

"The [Bankruptcy] Code in pertinent part defines a creditor as an entity that has a claim against

either the debtor or the estate, arising at certain specified times . . . . A claim means a right to

payment." *Id.* As previously discussed, the Lien gives Smithbuilt a right to payment (*i.e.*,

"surplus" from the Sheriff's sale of the Apartment) and makes Smithbuilt a lien creditor of the

Estate. Accordingly, Smithbuilt is a creditor and a party in interest.

---

[42] *See supra* fn.13.

[43] Section 362(d): On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

    (1)  for cause, including the lack of adequate protection of an interest in property of such party in interest;

    (2)  with respect to a stay of an act against property under subsection (a) of this section, if –

        (A)  the debtor does not have an equity in such property; and

        (B)  such property is not necessary to an effective reorganization.

### B. Grounds for Relief and Burden of Proof

Section 362(d) provides two grounds for stay relief: "Sections 362(d)(1) and (d)(2) are

disjunctive. This means the Court must lift the stay if the movant prevails under *either* of the

two grounds." *In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994) (emphasis

added) (citing *In re Touloumis*, 170 B.R. 825, 827 (Bankr. S.D.N.Y. 1994); *In re de Kleinman*,

156 B.R. 131, 136 (Bankr. S.D.N.Y. 1993); *In re Diplomat Electronics Corp.*, 82 B.R. 688, 692

(Bankr. S.D.N.Y. 1988)). Section 362(g) allocates the burden of proof under a lift stay

application. *See id.*; § 362(g).[44]

Nevertheless, "one considering the burden of proof must distinguish between the ultimate

burden of persuasion (or the risk of non-persuasion) and the initial burden of going forward. . . .

[T]he two are distinct, and a party can bear the initial burden of going forward even if it does not

bear the ultimate burden of persuasion. If it fails to carry its initial burden, the Court will dismiss

its application without requiring the party that bears the ultimate burden of persuasion to offer

any evidence." *Elmira Litho*, 174 B.R. at 900.

Accordingly, Smithbuilt must demonstrate a factual and legal right to the relief it seeks as

part of its *prima facie* case: "every party seeking relief from the automatic stay under §

362(d)(1) must carry the initial burden of showing that it is entitled to relief before the debtor is

obligated to go forward with its proof." *Elmira Litho*, 174 B.R. at 902 (citing *In re Planned

Systems, Inc.*, 78 B.R. 852, 859 (Bankr. S.D. Ohio 1987); *Sonnax Industries, Inc. v. Tri

Component Products Corp.* (*In re Sonnax Industries, Inc.*), 907 F.2d 1280, 1285 (2d Cir.1990);

---

[44] Section 362(g): In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any
act under subsection (a) of this section –

    (1)  the party requesting such relief has the burden of proof on the issue of the debtor's equity in property;
        and

    (2)  the party opposing such relief has the burden of proof on all other issues.

*In re Keene Corp.,* 171 B.R. 180, 182 (Bankr. S.D.N.Y. 1994)).

A party is entitled to relief under § 362(d)(1) for "cause," which includes lack of

adequate protection. *See* § 362(d)(1). Smithbuilt's predecessor-in-interest, NLI, argued that it

established a *prima facie* case supporting an order lifting the automatic stay because while NLI

could show that the value of its purported collateral was declining (*i.e.*, the Maintenance

continued to accrue during the stay, thereby decreasing the unencumbered part of the Apartment,

which, subject to Debtor's homestead exemption, could have been used to satisfy NLI's

judgment), Debtor could not show that NLI was adequately protected. Accordingly, NLI argued

that it had met its burden of proof while Debtor had not met hers.

However, "[s]ection 362(g)(2) places squarely on the debtor's shoulders the burden of

proving the absence of cause, and cause includes lack of adequate protection. . . . If the basis of

the stay relief is lack of adequate protection of an interest in property, the nature of the movant's

interest defines the need for adequate protection, and the scope of the *prima facie* case." *Elmira*

*Litho*, 174 B.R. at 902. Thus, the Court must inquire into the nature of Smithbuilt's interest in

determining whether Smithbuilt has met its initial burden of going forward with the evidence

such that it constitutes a *prima facie* case.

### C. Smithbuilt Lacks Adequate Protection

Smithbuilt has met part of its initial burden of going forward with the evidence by

demonstrating that it has an interest in the Apartment entitled to protection (*i.e.*, the Reduced

Lien). *See Elmira Litho*, 174 B.R. at 900, 902. However, a "secured creditor lacks adequate

protection if the value of its collateral is declining as a result of the stay. It must, therefore,

prove this decline in value – or the threat of a decline[45] – in order to establish a *prima facie*

case." *Id.*, 174 B.R. at 902 (citing *In re Sun Valley Ranches, Inc.*, 823 F.2d 1373, 1376 (9th Cir.

1987); *In re Marion Street Partnership*, 108 B.R. 218, 225 (Bankr. D. Minn. 1989); *In re

Raymond*, 99 B.R. 819, 821-22 (Bankr. S.D. Ohio 1989); *Planned Systems*, 78 B.R. at 862-63; *In

re Borchers*, 45 B.R. 69, 72 (Bankr. D. Iowa 1984); *In re Irving A. Horns Farms Inc.*, 42 B.R.

832, 837 (Bankr. D. Iowa 1984)).  Additionally, the "general rule is that for adequate protection

purposes a secured creditor's position *as of the petition date* is entitled to adequate protection

against deterioration."  *In re Ritz-Carlton of District of Columbia, Inc.*, 98 B.R. 170, 173

(S.D.N.Y. 1989) (citing *In re Datair Systems Corp.*, 42 B.R. 241, 243 (Bankr. N.D. Ill. 1984);

*Metropolitan Life Insurance v. Monroe*, 17 B.R. 934, 939 (D. Del. 1982)).  Accordingly, as

previously discussed, as of the Petition Date, Smithbuilt had an unavoidable lien of not less than

$8,923.07 against the Apartment that was entitled to adequate protection against deterioration.

Smithbuilt meets its burden of proving a decline or threat of decline in the value of the

unavoidable part of the Lien.  Smithbuilt argued that the Maintenance continued to accrue during

the stay, thereby decreasing the unencumbered part of the Apartment, which, because of

Debtor's homestead exemption, potentially left nothing for Smithbuilt to recover.  Smithbuilt's

argument is not based on mere speculation.  Indeed, while much of the evidence for this decline

---

[45] "Such 'threats' include the failure to maintain property insurance or the failure to keep the property in a good state of repair."  *Elmira Litho*, 174 B.R. at 902 fn.9 (citing *In re Brown*, 78 B.R. 499, 503 (Bankr. S.D. Ohio 1987)).  The court in *Brown* also cited non-payment of taxes as evidence establishing that an interest in property lacked adequate protection.  *See Brown*, 78 B.R. at 503.

or threat of decline comes from Debtor's own pleadings and other filings,[46] the most persuasive

evidence for the deterioration of Smithbuilt's interest is Rivercross's claim of $30,619.42, plus

late fees, for *post-petition* Maintenance.  Rivercross's claim was filed on September 14, 2006, so

when this amount is added to Rivercross's amended secured claim of $40,253.21 for pre-petition

Maintenance, both of which are due to Rivercross before the Lien may be satisfied, the value of

the Lien is wiped out completely by Debtor's homestead exemption.  Although the amount of

Maintenance has fluctuated and Rivercross in its own separate motion for relief from the stay

admits that Debtor has made "several partial payments" to Rivercross, Smithbuilt has clearly

proven a decline or threat of decline in the value of the Reduced Lien.[47]  Smithbuilt has thus met

the other part of its initial burden of going forward with the evidence by proving this decline in

value or the threat of a decline and has established a *prima facie* case under § 362(d)(1) entitling

it to relief from the stay.  *See Elmira Litho*, 174 B.R. at 900, 902.

The burden now shifts to Debtor to prove absence of "cause" pursuant to § 362(g)(2),

such as by proving "that the collateral is not declining in value, or that the secured party is

adequately protected through periodic payments, an equity cushion, additional or replacement

---

[46] Debtor stated in a pleading dated July 12, 2007, Rivercross was owed "$100,000 in rent arrears and other charges."  Debtor stated in the Motion to Reconsider, dated August 15, 2008, that Rivercross was owed "past due maintenance charges of $63,843.61."  In a letter to the Court dated November 3, 2008, Debtor's counsel stated that "as of October 21, 2008, the Debtor and her husband owe a total of $75,803.65."  Finally, in a letter from Rivercross to the Court dated November 18, 2008, Rivercross stated that the "outstanding amount owed . . . at the present time is $45,760.04."  Rivercross also stated that "[p]rior to any transfer, all amounts owed to Rivercross Tenants' Corp., together with New York State and New York City transfer fees and any other closing costs, would have to be paid."  Debtor repeats this amount, $45,760.04, in her most recent pleading, and this is the most current amount of Maintenance in the record.

[47] The court in *Elmira Litho* observed that a secured creditor can prove its case qualitatively without quantifying the decline in value of the collateral "by demonstrating that the debtor has completely failed, or substantially failed, to make post-petition payments."  *Id.*, 174 B.R. at 903 (citations omitted).  Considering that Rivercross, which is entitled to payment before Smithbuilt, demonstrated that Debtor at least substantially failed to make post-petition payments, Smithbuilt is certainly able to clear this hurdle.

liens or good prospects for a successful reorganization."[48]  *Elmira Litho*, 174 B.R. at 902

(citations omitted).  Debtor has not offered any such proof and has failed to show that Smithbuilt

is adequately protected.  Accordingly, Smithbuilt has cause for relief from the stay, and the Court

must grant Smithbuilt such relief under § 362(d)(1).  *See Elmira Litho*, 174 B.R. at 900.  The

stay is therefore terminated so that Smithbuilt may exercise its rights and remedies with respect

to the Reduced Lien in the amount of not less than $8,923.07, subject to Smithbuilt's reservation

of rights to challenge the Maintenance as a valid lien on the Apartment, *see supra* fn.13, 42 and

accompanying text.

## CONCLUSION

For the foregoing reasons, (i) the Lien against Debtor's interest in the Apartment is

reduced to not less than $8,923.07 (*i.e.*, the Reduced Lien), (ii) the balance of the Lien is

avoided, and (iii) the Lift Stay Motion is granted so that Smithbuilt may exercise its rights and

remedies against Debtor with respect to the Reduced Lien.  If Smithbuilt successfully challenges

the Maintenance as a valid lien on the Apartment, the Reduced Lien may be increased.  If

Smithbuilt's challenge is unsuccessful or Smithbuilt does not challenge the Maintenance as a

valid lien on the Apartment in the time set forth below, the Court shall enter an order consistent

with this opinion.

---

[48] The Court notes that these are among the means by which adequate protection may be provided under § 361.

Accordingly, for the foregoing reasons, it is hereby

ORDERED, the Lift Stay Motion is granted so that Smithbuilt may exercise its rights and

remedies against Debtor with respect to the Reduced Lien; and it is hereby further

ORDERED, Smithbuilt has until July 10, 2009 to commence an adversary proceeding

pursuant to Rule 7001(2) FBRP challenging the validity, priority, or extent of the Maintenance as

a consensual first lien as of the Petition Date.  If a complaint is filed, a pre-trial hearing date will

be set.  If no complaint is filed, a final order consistent with this opinion will be entered

regarding the amount of the Reduced Lien; and it is hereby further

ORDERED, to the extent Smithbuilt limits its challenge to the value of Rivercross's

claim for pre-petition Maintenance pursuant to Rule 3012 FRBP, Smithbuilt has until July 10,

2009 to file such a motion pursuant to Rule 9014 FRBP.  If a motion is filed, a hearing date will

be set.  If no motion is filed, a final order consistent with this opinion will be entered regarding

the amount of the Reduced Lien.


Dated: New York, New York
       May 22, 2009

                                        **/s/ Arthur J. Gonzalez**
                                        ARTHUR J. GONZALEZ
                                        UNITED STATES BANKRUPTCY JUDGE

44